UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HILL COUNTRY GALLERIA, L.P.,[1] | Case No. 09-11175 |
| Debtor. | |

## EXPEDITED MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, AND (3) MODIFYING THE AUTOMATIC STAY

The above-captioned debtor and debtor-in-possession (the "**Debtor**") hereby moves (the "**Motion**") the Court on an expedited basis for entry of an order (the "**DIP Order**," a copy of which is attached hereto as <u>Exhibit "A"</u> and incorporated herein by reference): (1) authorizing the Debtor to obtain post-petition financing pursuant to Section 364 of Title 11 of the United States Code (the "**Bankruptcy Code**") by entering into a post-petition, debtor-in-possession credit agreement (the "**DIP Loan**"), together with any related notes and deeds of trust, as the same may be amended, supplemented, or otherwise modified from time to time, and all instruments, agreements, assignments, and other documents (collectively, the "**DIP Documents**") referred to therein or herein or requested by the post-petition lenders (collectively, the "**DIP Lenders**") pursuant to the term sheet attached hereto as <u>Exhibit "B"</u> and incorporated herein by reference (the "**DIP Term Sheet**"),[2] all subject to the terms and conditions set forth herein and therein; (2) granting certain liens and super-priority administrative expense status to the DIP Lenders (including, as specifically set forth herein and in the DIP Term Sheet, an administrative

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is: Hill Country Galleria, L.P. (9496). The Debtor's corporate headquarters is located at, and the mailing address for the Debtor is, 2555 East Camelback Road, Suite 800, Phoenix, Arizona, 85016.

[2] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the DIP Term Sheet.

*DAL 77,629,149v3*

priority claim pursuant to Section 364(c)(1) of the Bankruptcy Code, liens pursuant to Sections 364(c)(2) and (3) of the Bankruptcy Code and priming liens pursuant to Section 364(d) of the Bankruptcy Code); and (3) modifying the automatic stay. In support of this Motion, the Debtor respectfully states to the Court as follows:

## I.
## BANKRUPTCY RULE 4001 CONCISE STATEMENT

1. The Debtor seeks immediate authority to borrow funds pursuant to the DIP Documents in order to fund certain tenant and landlord improvements, leasing commissions, and other project stabilization and enhancement efforts. Specifically, the Debtor requests:

   a. Entry of the proposed DIP Order in substantially the form attached hereto as Exhibit "A" authorizing, *inter alia*, the Debtor:

      i. To obtain post-petition financing in an amount up to $3,700,000 pursuant to Sections 363 and 364 of the Bankruptcy Code by entering into the DIP Documents (in addition to the amounts of cash collateral the Debtor has previously been authorized to use); and

      ii. To grant liens and super-priority claims to and on behalf of and for the benefit of the DIP Lenders to secure the obligations under the DIP Loan.

   b. In accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Court to schedule a final hearing on the relief requested in this Motion and approve notice with respect thereto.

2. The material provisions of the proposed debtor-in-possession financing are summarized in the DIP Term Sheet attached hereto as Exhibit "B."

## II.
## EXPEDITED CONSIDERATION

3. Pursuant to a separate motion filed contemporaneously herewith, the Debtor has requested that the Court hold an expedited hearing on the Motion on or before August 21, 2009 (the "**Motion to Expedite**"). Without immediate funding, the Debtor will not be able to pay for

necessary tenant and landlord improvements, pay leasing commissions, and fund other project stabilization and enhancement efforts. The Debtor therefore believes that expedited consideration of this Motion is necessary.

### III.
### STATUS OF THE CASE AND JURISDICTION

4. On May 4, 2009 (the "**Petition Date**"), the Debtor filed a voluntary Chapter 11 bankruptcy petition under Title 11 of the United States Code (the "**Bankruptcy Code**").

5. The Debtor has continued in possession of its properties and is operating and managing its businesses as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not been appointed in this case.

7. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

8. The statutory bases for the relief requested herein are Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 552, 726, 1114, and other similar sections of the Bankruptcy Code.

### IV.
### BACKGROUND

A. **General Overview.**

9. The Debtor, Hill Country Galleria, L.P., was formed as a Delaware limited partnership on September 7, 2005, and is owned by OWC Hill Country, Inc., which is the general partner of the Debtor, and by the following four limited partners: Opus West Partners,

Inc.; Baldwin Properties, Ltd.; Lincoln Galleria Holdings, L.P.; and Milam Galleria Holdings, L.L.C.

10. The Debtor was formed for the purpose of acquiring land and constructing, operating, managing, leasing, and disposing of a real estate development project known as the "Hill Country Galleria." The Hill Country Galleria contains retail shops, restaurants, and office space in an open air, main street design. This lifestyle project is situated in the southwest Austin suburb of Bee Cave and is anchored by Dillard's, Cinemark Theatre, Barnes & Noble bookstore, and Dick's Sporting Goods.

11. A more detailed factual background of the Debtor's business and operations, as well as the commencement of the Chapter 11 case, is more fully set forth in the *Affidavit of John Greer in Support of the Debtor's Chapter 11 Petition and Request for First-Day Relief* filed on the Petition Date and incorporated herein by reference.

B. **Pre-Petition Secured Financing.**

12. In connection with the Hill Country Galleria project, the Debtor entered into that certain *Construction Loan Agreement* (the "**Loan Agreement**"), dated as of July 27, 2006, by and among the Debtor, the financial institutions party thereto (collectively, the "**Pre-Petition Lenders**"), and LaSalle Bank National Association, as predecessor-in-interest to Bank of America ("**Bank of America**"), as amended by that certain *Modification of Loan Documents*, dated as of September 19, 2007, and that certain *Modification Letter*, dated as of March 21, 2008, pursuant to which the Pre-Petition Lenders made loans to the Debtor in the principal amount of $191,750,000. In consideration for the loans and other financial accommodations and to secure the repayment of the obligations thereunder (collectively, the "**Pre-Petition Secured Loans**"), the Debtor entered into that certain: (a) *Amended and Restated Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing*, dated as of July 27,

2006, as amended by that certain *Modification of Deed of Trust*, dated as of September 19, 2007, pursuant to which the Debtor granted to the Pre-Petition Lenders a (i) mortgage on the real property and security interest in the improvements, fixtures and other rights related thereto, and (ii) security interest in certain of its assets (collectively, the "**Pre-Petition Collateral**"); and (b) *Assignment of Rents and Leases*, dated as of July 27, 2006, pursuant to which the Debtor collaterally assigned to the Pre-Petition Lenders certain of its rights to leases, rents, contracts, and other agreements related to the real property.

13. The Pre-Petition Secured Loans are evidenced by those certain *Amended, Restated and Partially Consolidated Promissory Notes*, dated as of July 27, 2006, made by the Debtor to each of the Pre-Petition Lenders. The outstanding balance of the Pre-Petition Secured Loans as of April 30, 2009, was approximately $160,000,000.

## V.
## RELIEF REQUESTED

14. The Debtor seeks immediate authority to borrow up to $3,700,000 in post-petition, debtor-in-possession financing pursuant to the DIP Documents and as summarized in the attached DIP Term Sheet. Prior to the hearing on this Motion, the Debtor will supplement this Motion by filing a copy of the *Debtor-in-Possession Credit Agreement* currently being finalized with the DIP Lenders (the "**Loan Agreement**").

A. **The Debtor's Need for Financing.**

15. Approval of the DIP Loan is necessary for the Debtor to fund tenant and landlord improvements, leasing commissions, and other project stabilization and enhancement efforts. As a result of the financial collapse last fall, the Debtor has not had the funds to complete tenant improvements for existing tenants and to attract new tenants to the mall. The Debtor will suffer immediate and irreparable harm unless it is immediately authorized to obtain financing in the

amount and on the terms and conditions set forth herein, in the DIP Order, and in the DIP Documents.

16. Despite diligent efforts, the Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense claim pursuant to Section 364(c) of the Bankruptcy Code, and the Debtor has been unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of its estate pursuant to Sections 364(c) of the Bankruptcy Code.

17. Subject to the terms and conditions set forth in the DIP Order, the DIP Lenders are willing to make advances to the Debtor in the aggregate amount of up to $3,700,000 to allow the Debtor to fund necessary tenant and landlord improvements, leasing commissions, and other project stabilization and enhancement efforts.

**B.     Summary of Relief Sought.**

18. The Debtor seeks authorization to obtain, on an expedited basis, secured, super-priority post-petition financing on terms as outlined in the DIP Term Sheet. Specifically, the Debtor seeks the entry of the DIP Order authorizing (a) the Debtor to enter into the DIP Documents, (b) obtain the DIP Loan contemplated therein in one or more advances from the DIP Lenders, (c) to pay all interest, fees, expenses, and other obligations provided for under the DIP Order and the DIP Documents, and (d) to satisfy all conditions precedent and perform all obligations thereunder in accordance with the terms thereof.

19. A condition to the willingness of the DIP Lenders to fund the DIP Loan is that, as security for the prompt payment and performance of the DIP Loan and all interest, fees, expenses, and charges at any time payable by the Debtor under the DIP (collectively, the "**DIP Obligations**"), the DIP Lenders receive:

(a) Pursuant to Section 364(c)(2) of the Bankruptcy Code, a first-priority, perfected lien on all property of the Debtor that was not subject to a valid, perfected lien in existence on the Petition Date;

(b) Pursuant to Sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a junior, perfected lien on all property of the Debtor (other than the Pre-Petition Collateral) that was subject to a valid, perfected lien in existence on the Petition Date; and

(c) Pursuant to Section 364(d)(1) of the Bankruptcy Code, a first-priority, perfected senior priming lien on all of the Pre-Petition Collateral.

The liens described in items (a), (b), and (c) above shall hereinafter be referred to as the "**Post-Petition Liens**," and the Debtor's assets subject to the Post-Petition Liens shall hereinafter be referred to as and shall constitute "**Post-Petition Collateral**." Notwithstanding the foregoing provisions, the Post-Petition Liens shall not attach to any of the following property: (i) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "**Avoidance Actions**"); and (ii) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtor's estate.

20. Pursuant to the DIP Order, all DIP Obligations will be granted administrative priority in accordance with, and shall constitute an allowed super-priority claim (the "**Super-Priority Claim**") pursuant to the provisions of Section 364(c), 364(c)(1), and 364(d) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's bankruptcy case of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar section of the Bankruptcy Code, except for the carve-out for certain professional fees as set forth in the Loan Agreement.

21. Further, no costs or administrative expenses which have been or may be incurred in this Chapter 11 case, in any proceedings related hereto, or in any superseding Chapter 7 case, and no priority claims are or will be prior to or on a parity with the Super-Priority Claim of the

DIP Lenders against the Debtor arising under any of the DIP Documents, except for professional fees as set forth and approved pursuant to any separate order of the Court and fees payable to the U.S. Trustee and to the Clerk of the Court.

22. The Debtor believes that good cause has been shown for the entry of the DIP Order to obtain the DIP Loan on the relief requested herein pursuant to Bankruptcy Rules 4001(c) and (d). The Debtor's need for financing of the type requested herein and as afforded by the DIP Order is immediate and critical. Entry of the DIP Order will enable the Debtor to fund necessary tenant and landlord improvements, leasing commissions, and other project stabilization and enhancement efforts, thereby enabling the Debtor to obtain new tenants at its retail shopping center, retain existing tenants, and thereby preserve the assets of the Debtor's estate

23. The Debtor believes that approval of the DIP Loan is in the best interests of the Debtor, its creditors, and its estate. The Debtor further believes that the terms of the proposed financing are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

24. The DIP Loan is necessary to maintain the value of the Debtor's assets, including its going-concern value, and the ability to continue its business. For the foregoing reasons, and in order to assure operating capital, it is necessary for the Debtor to obtain the DIP Loan.

## VI.
## BASIS FOR RELIEF REQUESTED

25. The Debtor has been unable to obtain post-petition financing on an unsecured or junior priority basis. After much negotiation, the Debtor has reached an agreement with the DIP Lenders to provide post-petition financing pursuant to the DIP Term Sheet (the "**DIP Loan**"). The Debtor negotiated the post-petition financing requested herein at arm's-length and has determined that it is the best proposal under the circumstances. The principal terms of the proposed post-petition financing are set forth in the DIP Term Sheet attached hereto as Exhibit

"B." The DIP Term Sheet will be supplemented by the filing of the Loan Agreement when approved by the DIP Lenders. The Debtor requires the financing in order to fund necessary tenant improvements at the Hill Country Galleria. Without this funding, the Debtor will lose potential new tenants and quite possibly existing tenants as well.

A.  **Approval Under Section 364(c) of the Bankruptcy Code.**

26. Section 364 of the Bankruptcy Code allows the Debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the Court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super-priority administrative expense status or is secured by a lien on unencumbered property, or a combination of the foregoing.

27. The Debtor proposes to obtain the post-petition financing requested herein by providing security interests and liens pursuant to Section 364(c) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and hearing, that the Debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364(c) financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Group, Inc.*, 71 B.R. 544, 549, *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

28.  Courts have articulated a three-part test to determine whether a debtor is entitled to Section 364(c) financing:

   a.  The debtor is unable to obtain unsecured credit under Section 364(b) (*i.e.*, by allowing a lender only an administrative claim);

   b.  The credit transaction is necessary to preserve the assets of the estate; and

   c.  The terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender.

*See Crouse Group*, 71 B.R. at 549. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

29.  As noted above, the need for the Debtor to obtain financing is critical in order to fund necessary tenant and landlord improvements, leasing commissions, and other project stabilization and enhancement efforts.

**B.  The Debtor Does Not Have an Alternative to the DIP Loan.**

30.  In the current economic environment, the only source of financing for commercial real estate generally is the existing lender. Indeed, the potential other sources of a credit facility for the Debtor, obtainable on an expedited basis and on reasonable terms, are practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.*, 789 F.2d at 1088.

31.  A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). *Id.*; *In re Plabell*, 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search

for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom*, *Anchor Sav. Bank FSB v. Sky Valley*, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989). Thus, the evidence introduced at the hearing will satisfy the requirement of Section 364(c) that unsecured credit was unavailable to the Debtor.

32. Because of the Debtor's acute liquidity crisis, the status of the Debtor's operations and collateral base, and the impracticability of pursuing (and paying for) numerous prospective lenders, the Debtor has concluded that, in its business judgment, it was not practicable to try to "shop" the DIP Loan to every possible lender. However, only the Pre-Petition Lenders (who are, with the exception of one lender, acting as the DIP Lenders under the DIP Loan), who are already intimately familiar with the Debtor's business operations, corporate structure, financing arrangements, and collateral base, and have already performed the necessary due diligence in connection with the DIP Loan, were able to offer a post-petition credit facility to meet the Debtor's working capital needs on the terms, and within the time frame, that the Debtor needs.

C. **Application of the Business Judgment Standard.**

33. As described above, the Debtor's management has concluded that the DIP Loan provides the only alternative available under the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *Ames*, 115 B.R. at 38 (in examining requests by a debtor for interim financing, courts apply the same business judgment standard applicable to other business decisions); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of

administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

34. In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.*, at 513-14 (footnotes omitted).

35. The Debtor has exercised sound business judgment in determining that the proposed DIP Loan is appropriate and has satisfied the legal prerequisites to borrow under the DIP Loan. The terms of the DIP Loan are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to borrow funds from the DIP Lenders on the secured, administrative super-priority basis described above, pursuant to Section 364(c) of the Bankruptcy Code, and take the other actions as contemplated herein.

36. The Debtor believes that it could not obtain financing from any other lender on terms more favorable than the DIP Loan offered by the DIP Lenders. The Debtor's management exercised its best business judgment in negotiating the DIP Loan that is presently before the Court.

**D.**     **Request for Modification of the Automatic Stay.**

37. As set forth more fully in the proposed DIP Order attached hereto as Exhibit "A," the DIP Loan contemplates a modification of the automatic stay established pursuant to Section 362 of the Bankruptcy Code to permit the DIP Lenders to take certain actions required or permitted by the DIP Order. More specifically, the DIP Order provides the DIP Lenders with relief from the automatic stay to allow the DIP Lenders, *inter alia*, to enforce certain remedies

against their collateral under the DIP Loan without having to obtain any further order of the Bankruptcy Court. The Debtor submits that stay modification provisions of this sort are ordinary and usual features of post-petition, debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the proposed DIP Order.

### E. Good Faith.

38. Section 364(e) was designed to "encourage the extension of credit to debtors" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge."). *See also In re North Atlantic Millwork Corp.*, 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good-faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

39. The DIP Loan is and will be the result of good faith and arm's-length negotiations, with all parties represented by counsel. The Debtor believes that the terms of the DIP Loan are fair and reasonable under the circumstances and that DIP Lenders are entitled to the benefits of Section 364(e) of the Bankruptcy Code.

### F. Request for Hearing.

40. As requested in the separate Motion to Expedite, the Debtor respectfully requests that the Court schedule the final hearing on this Motion no later than August 21, 2009. Such

relief is necessary in order to fund necessary tenant improvements and to avoid immediate and irreparable harm and prejudice to the Debtor's estate.

41. No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE, PREMISES CONSIDERED**, the Debtor respectfully requests entry of the DIP Order granting the Debtor the relief requested herein, and such other and further relief as is just.

Dated: August 3, 2009

Respectfully submitted,

/s/ Bryan L. Elwood
Clifton R. Jessup, Jr.
Texas State Bar No. 10655020
Bryan L. Elwood
Texas State Bar No. 24029535
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-5938
Email: jessupc@gtlaw.com
elwoodb@gtlaw.com

Counsel for the Debtor
and Debtor-in-Possession

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion was served on August 3, 2009, (1) upon those parties receiving notice pursuant to the Court's ECF notification system, and (2) by pre-paid, first-class United States mail to those individuals listed on the attached Service List.

/s/ Bryan L. Elwood
Bryan L. Elwood

# SERVICE LIST
## Hill Country Galleria, L.P.
## Case No. 09-11175
## August 3, 2009

Office of the United States Trustee
Henry Hobbs
Assistant U.S. Trustee
903 San Jacinto, Room 230
Austin, TX 78701

Internal Revenue Service
Special Procedures - Insolvency
P.O. Box 21126
Philadelphia, PA 19114

State Comptroller of Public Accounts
Bankruptcy Section
P.O. Box 13528
Austin, TX 78711

Jody L. Hagemann
Jody L. Hagemann, P.C.
711 W. 7th Street
Austin, Texas 78701

Hill Country Galleria, L.P.
Attn: John Greer
2555 East Camelback Rd., Ste. 800
Phoenix, AZ 85016

Securities Exchange Commission
Burnett Plaza, Ste. 1900
801 Cherry St., Unit 18
Fort Worth, TX 76102

United States Attorney
601 N. Loop 410, Ste. 600
San Antonio, TX 78216

Bank of America, N.A.
Stephen M. Fenton
Senior Vice President
Relationship Manager
201 East Washington St., 22nd Floor
Phoenix, AZ 85004

Bank of Oklahoma, N.A.
Jennifer Pescatore
Senior Vice President
Manager Real Estate Lending
2398 E Camelback Road, Suite 535
Phoenix, AZ 85016

Bank of the West
William C. Weatherby
Vice President
4400 MacArthur Blvd, Suite 400
Newport Beach, CA 92660

MidFirst Bank
Roger N. DiSalvatore, Jr.
SVP Manager - Syndicated Lending
MidFirst Plaza
501 N.W Grand Blvd.
Oklahoma City, OK 73118-6054

The Northern Trust Company
Carol B. Conklin
Vice President
Commercial Real Estate
50 South La Salle Street
Chicago, IL 60603

Gary Sieveking
SVP CRC Special Assets
National City Bank, now a part of PNC
101 S 5th Street
Louisville, KY 40202

Key Bank National Association
John Carr
Vice President
The Lakes on Post Oak
3050 Post Oak Blvd., Suite 500
Houston, TX 77056

Landesbank Hessen- Thilringen Girozentrale
Stuart Levy
Vice President - Real Estate Finance
420 Fifth Avenue, 24th Floor
New York, NY 10018

Sovereign Bank
Peter A. Olivier
Vice President
75 State Street
Boston, MA 02109

Guaranty Bank
David B. Bell
Senior Vice President/
Division Manager
333 Clay Street Suite 4400
Houston, TX 77002

Andrea G. Albright, SVP
Bank of America
Global Product Delivery
901 Main Street, 9th Floor
Dallas, TX 75202

Randy C. Berberich, VP
Commercial Real Estate Deposit & Payment
U.S. Bank
101 North First Avenue, Suite 1600
LM-AZ-X16E
Phoenix, AZ 85003

Lower Colorado River Authority
Customer Service Office
11612 Bee Caves Road, Building 1
Suite 150
Austin, TX 78738

City of Austin
Utility Customer Service
P.O. Box 2267
Austin, TX 78783-2267

AT&T
AT&T Business Billing
14575 Presidio Square
Room 100-CR
Houston, TX 77083

Time Warner
Business Class
P.O. Box 2327
Harlingen, TX 78551-2327

Tony C's 71, LP
Attn: Dan Ciola
1310 Highway 620 South
Austin, TX 78734

| | | |
|---|---|---|
| Art Attack, Inc.<br>Attn: Linda Racino<br>303 Jack Nicklaus Drive<br>Austin, TX 78738 | Land-Bishop Realty, Inc<br>13420 Galleria Circle<br>Suite A105<br>Austin, TX 78738-5373 | Twin Liquors<br>Attn: David Jabour<br>107 W. Stassney Lane<br>Austin, TX 78705 |
| Tokyo Steak/Shiro<br>c/o CPW Investment, LP<br>Attn: Phoenix Pai<br>11217 Apple Lane<br>Austin, TX 78726 | Angels Nail & Tan<br>Attn: Tri and Tina Ta<br>13500 Galleria Circle<br>Austin, TX 78738 | STG Design Inc.<br>4330 Gaines Ranch Loop<br>Suite 100<br>Austin, TX 78735 |
| Sideline Ventures, LLC<br>Attn: Larry Leonard<br>1213 RR 620 South<br>Suite 202<br>Austin, TX 78734 | Ambrust & Brown LLP<br>100 Congress Avenue<br>Suite 1300<br>Austin, TX 78701-2744 | Delta Survey Group Inc.<br>8213 Brodie Lane<br>Suite 102<br>Austin, TX 78745 |
| Galleria Toys, LLC<br>Attn: Mike and Lisa Schlageter<br>15901 Spillman Ranch Loop<br>Austin, TX 78738 | Apricot Lanes<br>Attn: Douglas Booth<br>1301 S. Mopac Expressway<br>Suite 420<br>Austin, TX 78746 | Robert Gleason<br>11601 Hunters Green Trail<br>Austin, TX 78732 |
| Dogadilo, Inc.<br>Attn: Michael Conrad<br>4613 Bat Falcon Drive<br>Austin, TX 78738-6861 | Zoltan David<br>12901 Hill Country Blvd., Ste. D1-120<br>Bee Cave, TX 78738-6378 | Falcon Realty Advisors<br>16000 North Dallas Parkway<br>Suite 225<br>Dallas, TX 75248 |
| Birgitte, Inc.<br>Attn: Christina Linden<br>2303 RR 620 South<br>Suite 135-2752<br>Lakeway, TX 78734 | Sunglass Hut Trading Corp.<br>4000 Luxottica Place<br>Mason, OH 45040 | Attorney General of Texas<br>Attn: Bankruptcy & Collections Division<br>300 West 15th Street<br>Austin, TX 78701 |
| James V. Hoeffner, Kelle K. Masters<br>Christopher H Trickey<br>Graves Dougherty, Hearon & Moody, PC<br>401 Congress Avenue, Suite 2200<br>Austin, TX 78701 | Lloyd A. Palans/Brian C. Walsh<br>Bryan Cavel LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102-2750 | Keith Miles Aurzada<br>Bryan Cave LLP<br>2200 Ross Avenue, Suite 3300<br>Dallas, TX 75201 |
| David M. Bennett<br>John s. Brannon<br>Thompson & Knight LLP<br>1722 Routh Street, Suite 1500<br>Dallas, TX 75201 | Katharine Battaia Richter<br>Thompson & Knight LLP<br>98 San Jacinto Blvd., Suite 1900<br>Austin, TX 78701 | Patricia B. Tomasco/Vanessa E. Gonzalez<br>Munsch Hardt Kopf & Harr, P.C.<br>600 Congress Avenue, Suite 2900<br>Austin, TX 78701 |
| John B. Meadows<br>Law Offices of John B. Meadows<br>9065 Jollyvile Road, Suite 201<br>Austin, TX 78759 | Hill Country Fitness, LLC<br>Attn: Michael Peters<br>2203 Langford Cove<br>Austin, TX 78723 | C. Daniel Roberts<br>C. Daniel Roberts & Associates, P.C.<br>1601 East Cesar Chavez<br>Austin, TX 78702 |

| | | |
|---|---|---|
| Jay K. Farwell<br>The Gardner Law Firm, P.C.<br>745 East Mulberry Ave., Ste. 500<br>San Antonio, TX 78212 | John Paul Stanford<br>Quilling, Selander, Cummiskey, & Lownds, PC<br>2001 Bryan Street, Suite 1800<br>Dallas, TX 75201 | C. Wade Cooper<br>Monte F. James<br>Jackson Walker L.L.P.<br>100 Congress Ave., Ste. 1100<br>Austin, TX 78701 |
| Malcolm D. Dishongh<br>Wojciechowski & Associates, P.C.<br>17447 Kuykendahl Rd., Ste. 200<br>Spring, TX 77379 | Central Texas Drywall<br>c/o Calley D. Callahan<br>7600 N. Capital of Texas Hwy,<br>Bldg B, Ste. 110<br>Austin, TX 78731 | McCelndon Electrical Services<br>c/o Calley D. Callahan<br>7600 N. Capital of Texas Hwy,<br>Bldg B, Ste. 110<br>Austin, TX 78731 |
| James N. Rader<br>Associate General Counsel<br>Lower Colorado River Authority<br>P.O. Box 220<br>Austin, TX 78767-0220 | Craig E. Power<br>Cokinos, Bosien & Young<br>Four Houston Center<br>1221 Lamar St., 16th Floor<br>Houston, TX 77010 | Clayton D. Ketter<br>David F. Staber<br>Akin Gump Strauss Hauer & Feld LLP<br>1700 Pacific Ave., Ste. 4100<br>Dallas, TX 75201 |
| Ann Y. Riddel<br>P.O. Box 1912<br>Austin, TX 78767 | Rob Charles, Esq.<br>Lewis and Roca LLP<br>One south Church Avenue, Suite 700<br>Tucson, AZ 85701-1611 | Christopher D. Johnson<br>Selman Munson & Lerner, P.C.<br>820 Gessner, Ste. 800<br>Houston, TX 77024 |
| Patricia L. Akers / John R. Jones<br>Bickerstaff Heath Delgado Acosta LLP<br>816 Congress, Ste. 1700<br>Austin, TX 78701 | Stephen W. Sather<br>Barron, Newburger & Sinsley, PLLC<br>1212 Guadalupe Street, Suite 102<br>Austin, TX 78701 | Karon Y. Wright<br>Assistant Travis County Attorney<br>Collections Division-Bankruptcy Section<br>P.O. Box 1748<br>Austin, TX 78767 |